Good morning, Your Honor. May it please the Court, my name is Jesse Kaplan. I'm here on behalf of the appellant Joe Almeida. If I can, I'd like to begin by just mentioning a few really sort of basic facts that may not really have very much to do with the legal issues here. But just to say them on behalf of my client, these are in the record and just to understand who this person is and how he got to the place he is now, let me just mention that he's actually Portuguese from the Azores and he came to the United States in 1977. If you look at page 117 of the transcript, you'll see that he worked and paid Social Security taxes every quarter thereafter until we get to this disability claim. In 1985, he went back to the Azores and got married and came back here. And also in the record somewhere, probably talking to a physical therapist, but somewhere in the medical records, you'll see that he said, I used to run every other day and play soccer. This is, I feel a little guilty in a way, bringing such a simple case to this Court. This is a very standard kind of Social Security disability case, but I think that Joe Almeida deserves better than to be denied disability benefits based on what really are just mere words and not very adept manipulation of the appropriate legal principles. You can say anything you want in an administrative law judge decision, but that doesn't make it true. For instance, you know, his claims, what he says or what his treating physician says are not supported by appropriate clinical findings. There's no evidence that supports that, and it's really not, it's just not true at all. The evidence is replete with multiple reasons for the chronic lumbar and cervical pain, primarily lumbar, that he has. I mean, this is a counterfactual statement that just gets put into the decision. I think that's used against the treating physician for sure. Not supported by the general weight of the evidence. I argue that specifically in the brief. I mean, the weight of the evidence is clearly the treating evidence. There's quite a number of treating sources here, and the story that's told, the treating story here, is a story about somebody who's in really serious chronic pain and who is seeking out every avenue for relief of that pain. To say that his claim of disability is against the general weight of the evidence is also counterfactual. As I say in the brief, you don't go to people and get told, if we can pinpoint the source of your pain to your L45 disc, then we'll give you surgery and we'll, you know, put that area in cages and so on. You don't undergo multiple series of epidural steroids, facet joint injections, and so on. You don't take methadone and other medications all at the same time for years and years and years. You don't go visiting pain management specialists and so on and so forth with no relief, and things just getting worse and worse and worse for no reason. I mean, this is the story that's told by the medical evidence. And it's not consistent with sending this guy out and saying you can do light work, which by definition means that you can work on your feet six out of eight hours of the day, with the other two hours basically being consumed by lunch and regulated breaks. Saying that the treating physician's opinions appear to be influenced by the self-report of the patient. There's nothing in the opinions of Dr. Winkler that reflects that at all. It's just not there. Those are the mere words. There's mere words being used in argument that I want to say something about, which is, you know, the way this case is decided, of course, is to take the one doctor, the doctor that the system pays for, Dr. Mattaretti, the consultative examiner, the only person in the entire record who supplies evidence on which you can base a negative decision and rest your case on that, which, of course, is what was done. Calling that substantial evidence and letting the whole, letting this, if this Court will let this case go on that basis, I suggest that's just not acceptable. Almost every one of these cases is going to have that kind of evidence in the file. If all an administrative law judge has to say is that, and then if all this Court has to say is that, that well, you know, an examining physician can be substantial evidence, and the ALJ chose to rely on that examining physician, so that's substantial evidence, and so that's the end of the story, really we might as well all go home. Well, I understand that the district court has reviewed this. And the district court said that in addition to noting the lack of an objective condition which would be expected to cause disabling pain, the ALJ specifically took issue with plaintiff's testimony that one reason for his lack of ability to engage in many activities was the side effects from his medication that made him dizzy. The plaintiff also testified his pain medications caused him to go blind. And the ALJ questioned his, the veracity of plaintiff's testimony about the side effects, because there was no record that he had ever reported them. And the medication had been changed. Now, what do we do with the credibility? Well, if you actually go and look at what happened, namely the transcript of the hearing, let's begin by what I began with today. We've got, the fact of the matter is Joe Almeida speaks English pretty well, but it isn't his first language. And if you look at what really happened, he said he was speaking about a particular medication, dolephine, and he said it has these bad effects, including it affects my vision. And the next minute the administrative law judge is saying something like, so it does this and it makes you go blind and so on, right? And Joe Almeida says, yeah, this was a leading question that the administrative law judge trapped him with, if you want to take a perhaps a little bit dramatic view of things. And let me use that as a launching pad to note that the same thing happened with the medical expert that's on the other end of the telephone line at the hearing. You want to know how there's any other support for this besides that one consultative examiner? It's because the administrative law judge said, well, let's see, exhibit such and such, 12F or whatever it is, says thus and such about functional capacity. Would you agree with that, Doctor? He said, yeah, based on the record, Your Honor. End of story. So I would say that that possibly even implicates the administrative law judge's duty to develop the record because he didn't ask any other questions about any of the other evidence in the file and didn't pursue the basis of the opinion or whether there was any possibility of wiggle room in that opinion. I mean, this was another leading question also. Okay. You have about a minute left if you'd like to reserve some time for it. Well, okay. I guess I better be on the safe side. I have a few other things to say, but thank you. Good morning, Your Honors. My name is Theophis Regans. I'm Assistant Regional Counsel here to represent Commissioner Joanne Barnhart. Counsel, I'd like to begin where the previous discussion left off, and that's with credibility. The ALJ found a severe impairment in terms of back, degenerative back problems, and yet didn't believe the extent of pain that was testified to. The ALJ's opinion is pretty terse. It doesn't go through the sort of analysis that the regulations contemplate, looking at the person's daily activities, discussing their demeanor, and so on and so forth. It's pretty conclusory. And I'd like you to explain why the rejection of the testimony, why the rejection of credibility is permissible the way that it was actually analyzed, not what they might have said, but what they actually did say. Okay. I agree. It is a pretty terse credibility evaluation, and we actually took a second look at this. But nevertheless, we found, one, that the objective medical findings were very suggestive in that they indicated that although this person suffered from a back impairment, and there was no question about that, the severity of their pain was not supported by the objective findings. And that was verified by a number of examining physicians. Each one of them examined the claimant and found no atrophy, no wasting muscles. And I think three out of four examining physicians found that there was a negative straight leg raising and that the Babinski test did not show a pathological reflex. I think this is somewhat analogous to the Meno case, where the claimant alleged that he had very, very extreme pain, so much so that he was incapacitated. And the ALJ noted that there was no atrophy found, and that with that degree of pain, one would expect that the muscles would have wasted to some extent. Well, you know, the history of this issue in this court goes back a long way. And it used to be that the agency would hold that unless there are objective conditions that would cause pain, then we are going to ignore all subjective complaints. And we said, no, that's not right, and that subjective complaints do not have to be supported by testimony that's attributed both to a particular objective clause. Now, I can't remember in a long ‑‑ I've been around a long time. I can't remember a case where there was this serious an impairment, a physical problem, objectively evaluated by everyone as very serious, in which we're cutting the ‑‑ we're splitting the pain to that which is not credible and that which is. What's the case that's closest to this, where you have this serious an impairment and yet a credibility determination that I don't believe that he has that much pain? Well, first, I think the case that we ‑‑ that we look at, that I look at when I'm looking at a pain case is Bonnell, and that sets the standard. One of the cases that I looked at yesterday prior to coming here was Meno, and I did a fairly good reading of it, and it seemed to suggest to me that the facts were somewhat similar. However, I can't give you a citation to a case where they talk about the severity exactly like this. I can't give you that. But one of the things that bothered me when I first reviewed the case was that the objective ‑‑ the absence of objective findings, which include the no stenosis, no protrusion of the disc, no evidence of nerve root damage, which don't suggest that the person doesn't have pain, but which do suggest that it's not extreme pain. Those are what the medical expert called the usual indicators of extreme pain, and they were not present in most of the examinations. The ALJ relied upon that quite a bit, and that was disturbing to me. Well, the ALJ really didn't rely on anything else other than the lack of corroborative medical tests. That was actually the genesis of my original question to you, because it does require a fuller explanation when there is a physical condition that could cause pain about rejecting the credibility on the extent of pain, and this ALJ didn't go through the kinds of steps that the regulation appears to require. And I want to take it one step further and ask you to assume that we were to find that the adverse credibility finding is not sufficiently supported, and I obviously don't conceive that, but if that were the case, what is your view of what the next step would be? Would we grant benefits? Would we remand for reconsideration? Considering him credible, what would we do? I believe that you should ‑‑ I'll answer the first question, the second question first. I believe that it should be remanded, because we still don't know, even if the credibility finding is deemed insufficient, we don't know that the claimant is necessarily credible. We just know you would be finding that the ALJ did not go through the proper steps. We still don't know to what extent this person experienced pain, and we still don't know what the residual functional capacity would be, so we wouldn't know whether this itself was insufficient. And I would also ask that you would take a look at the ALJ's decision, and unfortunately, I don't have the page number here, but it's next to the last page. And the ALJ did talk about the inconsistent treatment record. He did talk about progress, which is a factor. Talked about what? I didn't hear. Inconsistent treatment record. I'm sorry if I'm speaking too quickly. In 2001, 2002, he did talk about progress. Now, he used the word steady. I don't believe that the progress was steady, but there was progress noted in the treatment notes. He also indicated that therapy had worked in the past, and the doctor actually indicated that there had been some progress with the epidural treatment and with the trigger point treatment. And those things are not treatments that are supposed to completely eradicate the pain. Epidural treatment and trigger point treatment is used in conjunction with therapy, which his other physician also recommended that he continue. And the ALJ found, observed that physical therapy and his treatment measures had assisted his, had alleviated some of his pain in the past, and assumed that it would probably alleviate it in the future if he continued to go to his physical therapy treatments. And there's also, even though the ALJ doesn't mention it, there's also a record, a notation in the record from the physical therapist that the claimant stopped going to treatment. He was, he was, he was. Well, if the ALJ didn't mention it, then how can, don't we have to take what the agency actually did, not what it could have done? Well, I would hope that you, that we, that we could rely upon the record in its entirety in looking at the conduct of the claimant, particularly in a case where there's conflicting evidence and there's a question of credibility. Aren't we reviewing the ALJ's decision, though, not de novo reviewing the record? That's true. Okay. That's true. But even if we confine ourselves strictly to the record, there is the ALJ's notation that the TENS unit had worked in the past, but apparently he didn't use it consistently. There is the ALJ's observation that there had been some progress with physical therapy, and there is the ALJ's notation that his treating physician recommended further physical therapy treatments, assuming that it would work. And if you look at the AL, that therapist's discussion, he actually indicates that he, his goal was to bring his pain down 50 percent. So his condition may change, he may improve, and he may not be entitled to benefits in the future. I mean, how many chances does an ALJ have to get it right? Well, again, that assumes that this is an absolutely incorrect marshaling of the factors, and we don't concede that. I think there are some nonmedical reasons that the ALJ actually discussed, and that in conjunction with the medical factors is sufficient. I don't know of any case that tells us how many factors we have to list. And when I look at, when I'm reviewing these cases, I look at quality as well as quantity. And in this case, there were four examining physicians who found that this person's objective signs did not support his allegations. And in addition to that, the ALJ noted some other factors. Any other questions? No. Thank you, counsel. Thank you. I'll just say two points, except that now I have to say a third one. I certainly don't agree that four examining physicians said whatever exactly Mr. Reagan said then. I think the entire record supports Mr. Almeida with the exception of the consultative examiner and the doctor at the other end of the telephone. But the two points I want to make are, number one, obviously I've handled an awful lot of these cases, and the kind of argument that I just heard about, these are the things we look for for pain, annoys me because I've seen these decisions written again and again and again. This is what we look for for discogenic pain. This is not what we look for for pain. These are neurological signs that he's talking about, and moreover, muscle wasting is very darn hard to find, let me tell you. I don't --" Okay. Number two, with respect to the two things we're talking about here, analyzing a claimant and analyzing a treating physician, I want to make sure that the Court notices the point that even when an administrative law judge chooses not to precisely say what a claimant or what a treating physician is saying, the ALJ still has to analyze both of them and has to analyze them according to the regulations. Right. We understand. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Graber, Duffy